**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CODY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:22-cv-02606-GCS** |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **JASON FURLOW, NATHAN SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION & BACKGROUND

Plaintiff Cody Smith, and inmate of the Illinois Department of Corrections, brings this suit under 42 U.S.C. § 1983 for violations of his rights while he was housed at Menard Correctional Facility. (Doc. 1; Doc. 7). Plaintiff alleges that Defendants Jason Furlow and Nathan Smith violated the Eighth Amendment by failing to protect him from sexual assault by his cellmate. For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on November 9, 2022. (Doc. 1). The Court reviewed Plaintiff's complaint and allowed the case to proceed on the following claim:

**Claim 1:** **Eighth Amendment failure to protect claim against Defendants Smith, Furlough, and John Doe for failing to respond to Plaintiff's January 17, 2020, requests for**

**assistance.**

(Doc. 7, p. 2-3). Defendants filed a Motion for Summary Judgment on November 14, 2025. (Doc. 114). Plaintiff filed a Response on April 21, 2026. (Doc. 122). Defendants filed a Reply on May 5, 2026. (Doc. 124).

## FACTUAL BACKGROUND

The following facts are taken from the record (in light of Plaintiff's supplemental information), presented in the light most favorable to Plaintiff, and all reasonable inferences are drawn in his favor. See *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Plaintiff was housed at Menard Correctional Center ("Menard") in January of 2020. (Doc. 1, p. 6). He had been housed with his cellmate, Marquis Davis, for more than a month. (Doc. 1, p. 6; Doc. 114-1, p. 6). Plaintiff's relationship with Davis prior to mid-January was not good; Davis had threatened and shoved Plaintiff while they were housed together. (Doc. 1, p. 6; Doc. 114-1, p. 7). The situation deteriorated even further in mid-January. Plaintiff approached Defendant Furlow and told him that he was trying to be moved to a new cell because "me and my celly are not getting along." *Id.* at p. 5. Plaintiff did not provide any more information to Defendant Furlow. *Id*. Defendant Furlow told Plaintiff that he wasn't going to do anything about it and that Plaintiff would have to wait until the next morning for help. *Id.* On the same day that Plaintiff spoke to Defendant Furlow, he also spoke to Defendant Smith. *Id.* at p. 6. Plaintiff told Smith that he was not getting along with his cellmate, and Smith responded that he would "let them know and see what we can do." *Id*. Nothing happened before Plaintiff was assaulted. *Id*. On the night of January 18, Plaintiff's cellmate sexually assaulted him. (Doc. 1, p. 8; Doc. 114, p.

2). Plaintiff reported the assault on January 19, at which point he was taken to the Health Care Unit and taken to a local hospital. (Doc. 1, p. 15-23). The prison concluded that the assault occurred and referred Plaintiff's cellmate for prosecution. *Id*. at p. 14.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence

that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted); *Smith v. City of Janesville*, 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology*, 893 F.3d 1001, 1006 (7th Cir. 2018) (citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation omitted).

## DISCUSSION

As a preliminary matter, the Court turns to address Defendants' claim that Plaintiff's Response to their Motion for Summary Judgment amounts to a sham affidavit and should be excluded because it contradicts Plaintiff's deposition testimony. (Doc. 124, p. 2-4). The Court does not agree because Plaintiff's deposition testimony was ambiguous regarding when he spoke to Defendants.

The sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or sworn testimony. *See James v. Hale*, 959 F.3d

307, 316 (7th Cir. 2020); *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018). The purpose of the sham-affidavit rule is "to weed out unfounded claims, specious denials, and sham defenses." *James*, 959 F.3d at 316 (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985)). At the same time, the Court is not to judge the credibility of testimony at the summary judgment stage. Because the sham-affidavit rule requires the Court to judge the credibility of testimony, it is to be construed narrowly and applied with caution. *See Castro v. DeVry University, Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). *See also Whitaker v. Dempsey*, 144 F.4th 908, 919 (7th Cir. 2025) (excluding affidavit as sham only where court could not "think of a plausible explanation" for how party could have been confused or mistaken). There are thus exceptions to the sham-affidavit rule, including that a party may submit a supplemental affidavit to clarify ambiguous or confusing testimony or where the deposition testimony was clearly mistaken. *See Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1171 (7th Cir. 1996) (clarifying testimony); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (supplemental affidavit permissible where a lapse of memory or confusing questioning is a plausible explanation for contradiction).

The Court finds that Plaintiff's deposition testimony was ambiguous and confusing. In his complaint, Plaintiff alleged that he spoke to Defendants on January 17, 2020:

> "I told Defendants — Officer-Smith and Sgt. Furlough [sic] on the same date of January 17, 2020 that I feared for my safety. . . I also alerted [an unnamed correctional officer] who worked my gallery on that same date of January 17, 2020, before the January 18, 2020 date of the rape."

(Doc. 1, p. 6, 8). Doc. 114-1, p. 4, 5). Plaintiff also situated the time that he spoke to

Defendants in relation to the date that he was sexually assaulted. *Id*. The parties do not dispute that Plaintiff was sexually assaulted or the assault occurred on the night of January 18, 2020. (Doc. 114, p. 2; Doc. 122, p. 2). Plaintiff's medical records corroborate this date because they indicate that Plaintiff reported and was treated for the assault the morning after it occurred, on January 19, 2020. (Doc. 1, p. 6, 8, 14, 15, 16, 17).

At his deposition, Plaintiff presented a more confused timeline. Although he responded in the affirmative when counsel for Defendants asked him if he had spoken to Defendants on "approximately January 17," (Doc. 114-1, p. 5), he also gave conflicting answers as to precisely when he spoke to Defendants. Immediately after affirming that he spoke to Defendant Furlow on January 17, Plaintiff indicated that the sexual assault happened "that night," *i.e.* January 18. *Id.* Slightly later, when counsel for Defendants asked if Plaintiff spoke to Defendants on the day before the assault or the day of the assault, Plaintiff answered, "I believe so, yes." *Id*. at p. 6. Then, when asked a third time, Plaintiff said that he had spoken to Defendants "[t]he day before" the assault occurred, *i.e.* January 17. Within a few minutes, Plaintiff provided three different answers after being asked when he spoke to Defendants. It is also plausible that a victim of sexual assault might have confused recollections of the time around when the assault occurred. Accordingly, the Court finds that Plaintiff's deposition testimony was ambiguous and confused and construes Plaintiff's Response as a supplemental affidavit to clarify his deposition testimony.

Notwithstanding the above analysis, however, Defendants are entitled to summary judgment. To prevail on a claim for failure to protect in violation of the Eighth

Amendment, Plaintiff must show "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). A prison official acts with deliberate indifference where he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, the question is not whether officials should have known, it is whether they actually knew. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). Where a prison official has actual knowledge of a substantial risk of serious harm, he is required to take reasonable actions in response to the risk. *See Nielsen v. Sexton*, 168 F.4th 968, 986 (7th Cir. 2026).

Vague information is not sufficient to put prison officials on notice of a threat that an inmate faces. *See*, *e.g.*, *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002), abrogated on other grounds by *Kemp v. Fulton County*, 27 F.4th 491, 495-496 (7th Cir. 2022) (noting that inmate's request to be moved from cell because he was "having problems in the block" and "needed to be removed" not sufficient to give notice of threat)*; Grieveson*, 538 F.3d at 776 (noting that inmate did not put prison officials on notice of threat when he told them he was afraid and wanted to be moved). *But see Mayoral v. Sheahan*, 245 F.3d 934, 938-939 (7th Cir. 2001) (noting that evidence that a threat of attack was longstanding or pervasive, or that prison officials had noted the threat in the past, may be sufficient to survive summary judgment).

Defendants are entitled to summary judgment because no reasonable jury could find that they had actual notice of the threat that Plaintiff's cellmate posed to him. The

Seventh Circuit's conclusions in *Butera* and *Grieveson* are dispositive here. Plaintiff did not tell Defendants that he was afraid, as the inmate in *Grieveson* did, or that he needed to be moved, as the inmate in *Butera* did. Plaintiff told Defendants nothing more than that he was not getting along with his cellmate and that he was trying to move to a different cell. (Doc. 114-1, p. 5, 6). That was simply not enough information to put Defendants on notice of the threat that Plaintiff faced. No reasonable jury could conclude otherwise.

Nor is there evidence in the record to suggest that the threat to Plaintiff was longstanding or pervasive, or that Defendants had noted it before. Plaintiff explained that his cellmate began to threaten him after Plaintiff made a remark about a football game within a day or so of the assault on January 18. (Doc. 114-1, p. 6). Such a rapid escalation could not be longstanding or pervasive at the time that Plaintiff spoke to Defendants, and there is no evidence that Defendants had taken note of it before Plaintiff spoke to them. They could not have done so because Plaintiff spoke to the Defendants either before the escalation or on the same day that it happened.

Finally, Plaintiff argues that once he told Defendants that he was not getting along with his cellmate, they had a duty to investigate his complaint. (Doc. 122, p. 2). Plaintiff may be correct that investigating could be a reasonable response to a substantial risk of serious harm. However, the duty to take reasonable actions in response to a risk is only triggered *after* prison officials know of the risk. *See Nielsen*, 168 F.4th at 986. Or, looking at it another way, it is not clear to the Court that there was anything for Defendants to investigate based on what Plaintiff told them. Two people not getting along is not an unusual occurrence. Without sufficient information for Defendants to actually know that

Plaintiff was at substantial risk of serious harm, they were not required to investigate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment. The Court DIRECTS the Clerk to enter judgment for Defendants and close the case.

**IT IS SO ORDERED.**

**DATED: September 22, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.22 15:22:52 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**